NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

INFORMATION COPY
MANDATE NOT YET ISSUED
DIS. CT. # 03-86

FILED
OCT 1 6 2006
LEONARD GREEN, Clerk

No. 05-3566

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | ON APPEAL FROM THE UNITED |
| Plaintiff-Appellee, ) | STATES DISTRICT COURT FOR THE |
| ) | SOUTHERN DISTRICT OF OHIO |
| v. ) | |
| ) | |
| ANDRE LAMAR PLAYER, ) | |
| ) | |
| Defendant-Appellant. ) | |

BEFORE: ROGERS and GRIFFIN, Circuit Judges; and OBERDORFER, District Judge.*

GRIFFIN, Circuit Judge.

Defendant Andre Lamar Player appeals his conviction and sentence for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) following a jury trial in the district court. Player argues that the district court erred in denying his motion to suppress certain evidence resulting from the search of a vehicle he was operating when arrested, that there was insufficient evidence to support his conviction, and that the district court erred in determining that he qualified for a sentence enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). We affirm.

I.

---

*The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

No. 05-3566
*USA v. Player*

At approximately 12:40 a.m. on October 13, 2002, the Dayton, Ohio Police Department ("DPD") sent out an alert message to all police cruisers in the city's fifth district, reporting that a woman at a local beverage drive-through had been threatened with a gun. Shortly after receiving the alert, DPD officers Amber Lee Baca and Eric Brown spotted a maroon Oldsmobile that matched the DPD's description of the suspect vehicle. Two individuals were seated in the Oldsmobile. After observing the vehicle make an illegal right-hand turn on a red light, Officers Baca and Brown initiated a traffic stop. As the suspect vehicle slowed to a stop, the front passenger opened his door and fled on foot. Officer Brown chased the fleeing suspect while Officer Baca approached the driver, defendant Player. Player was detained in the back of the police cruiser while Officer Brown apprehended the passenger, later identified as James Wright. Wright was arrested and subsequently charged with aggravated menacing in connection with the incident at the drive-through.

Player could not produce a valid driver's license and told Baca that the Oldsmobile belonged to his wife. After conducting a background check of Player's name through her computer, Officer Baca discovered that Player did not have driving privileges and therefore arrested him for driving without a valid driver's license. Because both occupants of the Oldsmobile were arrested, the vehicle was impounded. Before the vehicle was impounded, DPD Officer Dan Reynolds performed an inventory search of the vehicle and discovered a semiautomatic handgun in the glove compartment. Player told Officer Brown that he had observed Wright threaten the drive-through victim with the handgun and stated that he took responsibility for the handgun being in his wife's car, but not for Wright's use of it.

No. 05-3566
USA v. Player

On July 8, 2003, a grand jury indicted Player on two counts of being a felon in possession of a firearm and one count of being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). On December 18, 2003, the government moved for a preliminary ruling to determine whether Player qualified as an armed career criminal under the ACCA. At the direction of the district court, the parties filed a joint stipulation of facts in support of the government's motion. Player stipulated to the following facts concerning his prior arrests:

1. On January 3, 1997 the defendant . . . robbed a female identified as Cassandra Nelson at or near Dayton, Ohio.

2. At approximately 5:40 p.m. on January 6, 1997, at or near 749 Geneva, Dayton, Ohio, the defendant . . . robbed a female identified as Odessa Stephens.

3. At approximately 6:08 p.m. on January 6, 1997, at or near 2017 Wesleyan, Dayton, Ohio, the defendant . . . robbed a female identified as Chaney North.

4. After being arrested and indicted for these robbery/purse snatchings, the defendant pled guilty on April 11, 1997 to three counts of Robbery in violation of O.R.C. § 2911.02, each considered a F-2 category felony.

5. On May 7, 1997, the defendant was sentenced to [a] three (3) year term of imprisonment on each count to be served concurrent with each other, together with a $500 fine on each count.

Player filed a pretrial motion to suppress evidence discovered during the DPD's search of the Oldsmobile. The district court conducted an evidentiary hearing on Player's motion on June 30, 2004, and later entered an order denying Player's motion to suppress and concluding that Player, if convicted, would be sentenced as an armed career criminal pursuant to 18 U.S.C. § 924(e). After a three-day jury trial, Player was convicted on one count of being a felon in possession of a firearm

-3-

and acquitted on the second count of being a felon in possession of a firearm. On the government's motion, the district court dismissed one count of possessing ammunition as a felon. On April 19, 2005, the court sentenced Player to a term of confinement of 180 months, five years of supervised release, and payment of a $100 special assessment.

This timely appeal followed.

II.

Player first argues that the district court erred in denying his motion to suppress evidence seized during the DPD's inventory search of the Oldsmobile. He asserts that the inventory search was unreasonable because it was allegedly conducted for the purpose of investigation only. When reviewing a district court's ruling on a motion to suppress, we will reverse findings of fact only if they are clearly erroneous. *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir.), *cert. denied*—U.S. —, 126 S. Ct. 2313 (2006). "[L]egal conclusions as to the existence of probable cause are reviewed de novo." *Id.* (quoting *United States v. Combs*, 369 F.3d 925, 937 (6th Cir. 2004)). "When the district court has denied the motion to suppress, we review all evidence in a light most favorable to the Government." *Id.* (quoting *United States v. Galloway*, 316 F.3d 624, 628 (6th Cir. 2003)).

Player argues that once he was arrested, there was no need to impound the Oldsmobile or perform an inventory search, and that the search was therefore performed solely for the purpose of investigation. The Supreme Court has long recognized that law enforcement officers may make a warrantless search of a legitimately seized vehicle, provided that the inventory is conducted according to standardized criteria or an established routine. *Colorado v. Bertine*, 479 U.S. 367, 372-

-4-

No. 05-3566
USA v. Player

74 (1987); *South Dakota v. Opperman*, 428 U.S. 364, 372 (1976). These searches "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Bertine*, 479 U.S. at 372. Vehicle inventory searches are an exception to the Fourth Amendment's probable cause requirement and are valid if conducted in accordance with standard police procedures. *Id.* at 371-72; *United States v. Harvey*, 16 F.3d 109, 112 (6th Cir. 1994).

After Officer Baca discovered that Player lacked driving privileges and Officer Brown apprehended Wright, both occupants of the car were arrested, requiring the Oldsmobile to be impounded. Before towing the vehicle, Officer Dan Reynolds conducted an inventory search. At the suppression hearing, Officer Reynolds testified that the DPD has a standard procedure for conducting inventory searches that requires vehicles to be searched before they are towed. Furthermore, Officer Reynolds testified that the DPD's inventory searches are performed for the purpose of documenting the valuables in the car and the condition of the car when impounded for the protection of the car owner and the police department. *See United States v. Perkins*, 994 F.2d 1184, 1188-89 (6th Cir. 1993) (noting that appellate court is not restricted to considering evidence offered at suppression hearing, and may consider trial testimony); *accord United States v. Canieso*, 470 F.2d 1224, 1226 (2d Cir. 1972) ("It is settled law that the validity of an arrest or search can be supported by evidence which was adduced at trial even though this was not presented at the pretrial suppression hearing.") (citations omitted). Thus, the district court did not err in finding that the DPD has a policy that requires an inventory search to be performed before an automobile is towed and

No. 05-3566
*USA v. Player*

concluding that the inventory search performed by Officer Reynolds complied with the Fourth Amendment.

III.

Player also argues that there was insufficient evidence to support the jury's finding of guilt. In considering a party's sufficiency-of-evidence claim, the pertinent inquiry is "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Lloyd*, 10 F.3d 1197, 1210 (6th Cir. 1993) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). The district court's findings of fact are reviewed for clear error, and circumstantial evidence alone may be sufficient to sustain a conviction. *Lloyd*, 10 F.3d at 1209-10. All reasonable inferences are to be drawn in the government's favor. *Id.* at 1210.

In order to sustain a conviction under 18 U.S.C. § 922(g)(1), the government must prove that: (1) the defendant had a prior felony conviction; (2) the defendant knowingly possessed the firearm, either actually or constructively; and (3) the firearm had traveled in interstate commerce. 18 U.S.C. § 922(g)(1); *Coffee*, 434 F.3d at 895. Player challenges the sufficiency of the evidence regarding the element of possession, arguing that there is insufficient evidence linking him to the gun because the gun was found in the glove compartment of a vehicle belonging to his wife.

"Evidence of either actual or constructive possession of a firearm is sufficient to sustain the verdict." *Coffee*, 434 F.3d at 895. The government advanced its case against Player based on a theory of constructive possession, which exists "when a person does not have actual possession but

-6-

No. 05-3566
*USA v. Player*

instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973). Constructive possession may be proved by direct or circumstantial evidence, and it is not necessary that such evidence remove every reasonable hypothesis except that of guilt. *Id.* "Proof that 'the person has dominion over the premises where the firearm is located' is sufficient to establish constructive possession." *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998) (quoting *United States v. Clemis*, 11 F.3d 597, 601 (6th Cir. 1993)).

Player's contention is without merit. In *United States v. Birmley*, 529 F.2d 103 (6th Cir. 1976), the defendant was convicted under § 922(g)(1) for possession of firearms found in the trunk of a vehicle. *Id.* at 107. We affirmed the conviction, concluding that because the defendant was the driver of the vehicle and had access to the trunk, he had sufficient dominion and control over the firearms, despite the fact that he was not the owner of the vehicle. *Id.* This case is analogous and offers two factors that present a stronger case for finding constructive possession. First, Player was driving a car registered to his wife; in *Birmley*, the defendant was driving a car owned by a co-defendant, who was a passenger at the time the firearms were discovered. *Id.* Second, unlike *Birmley*, where the subject firearms were located in a locked trunk, the semiautomatic firearm at issue here was found in the glove compartment, within an arm's reach from the driver's seat. Applying the logic of *Birmley*, Player had sufficient control over the firearm located in the glove compartment to be convicted pursuant to § 922(g)(1).

No. 05-3566
*USA v. Player*

Other evidence offered at trial supports Player's conviction. Officer Baca testified that after she read Player his Miranda rights, Player told her that he took responsibility for the gun being in the car. Furthermore, the victim of the drive-through menacing identified Player as the driver of the vehicle and stated that Player was present at the time of the incident. Thus, there is ample evidence to support the jury's finding beyond a reasonable doubt that Player possessed a firearm in violation of 18 U.S.C. § 922(g)(1).

IV.

Finally, Player contends that the district court erred by sentencing him as an armed career criminal under the ACCA. The ACCA provides, in pertinent part:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1). Player challenges the district court's imposition of a fifteen-year sentence pursuant to the ACCA, arguing that the two robberies he committed on January 6, 1997, were not "committed on occasions different from one another" but were rather a single episode of crime. However, Player does not dispute that all three of his prior convictions are classified properly as violent felonies. This court reviews de novo the district court's determination that Player qualifies as an armed career criminal under the ACCA. *United States v. Hill*, 440 F.3d 292, 295 (6th Cir. 2006).

-8-

No. 05-3566
*USA v. Player*

The lead case in this circuit on the question of whether two violent felonies, occurring in temporal and physical proximity to each other, were committed on different occasions for purposes of the ACCA is *United States v. Brady*, 988 F.2d 664 (6th Cir. 1993) (en banc).[1] In *Brady*, the defendant argued that two armed robberies – the first occurring at the Mack Avenue Beauty Shop, and the second occurring thirty minutes later at the Club Continental Bar, both in Detroit, Michigan – should count only as one predicate offense for purposes of determining eligibility for a sentence enhancement under § 924(e)(1). We rejected Brady's argument, holding that "offenses committed by a defendant at different times and places and against different victims, although committed within less than an hour of each other, are separate and distinct criminal episodes and that convictions for those crimes should be counted as separate predicate convictions under § 924(e)(1)." *Brady*, 988 F.2d at 669.[2] We emphasized that the defendant had successfully completed his armed robbery and had escaped safely from the Mack Avenue Beauty Shop before attempting the second robbery. *Id.* ("[W]hile defendant Brady sat at the Club Continental Bar with his concealed shotgun, he could have decided that the one robbery he had committed was enough for the evening. Instead, he decided to rob again, and, after robbing the patrons of the bar, he shot one female patron in the leg.").

---

[1] As long as the offenses were committed on separate occasions, it does not matter, for purposes of determining a defendant's eligibility under § 924(e)(1), whether they were adjudicated together or combined for sentencing. *United States v. Hayes*, 951 F.2d 707, 708-09 (6th Cir. 1991).

[2] We have previously defined an "episode" for § 924(e)(1) purposes as "an incident that is part of a series, but forms a separate unit within the whole. Although related to the entire course of events, an episode is a punctuated occurrence with a limited duration." *Brady*, 988 F.2d at 668 (quoting *United States v. Hughes*, 924 F.2d 1354, 1361 (6th Cir. 1991)).

No. 05-3566
USA v. Player

We next addressed the issue in *United States v. Wilson*, 27 F.3d 1126 (6th Cir. 1994), where we held that two previous convictions for criminal sexual conduct for offenses occurring on the same date and in the same building were nonetheless "separate offenses" because they were committed against separate victims on different floors and locations within the same building. *Id.* at 1131. We analogized these facts to *Brady*, noting that the defendant "could have halted his criminal rampage at any time. Yet, he chose to continue selecting different victims in different places." *Id.*

In *United States v. Graves*, 60 F.3d 1183 (6th Cir. 1995), we concluded that the ACCA was inapplicable where the defendant assaulted a police officer when confronted in the woods outside of a home that the defendant had just burglarized. *Id.* at 1187. We relied upon the fact that the defendant had not yet left the location of the first offense and that the assault occurred within moments of the burglary to conclude that the assault and burglary could not be considered separate episodes. *Id.*

We again considered the issue in *United States v. Murphy*, 107 F.3d 1199 (6th Cir. 1997). In *Murphy*, the defendant argued that two armed robbery convictions, stemming from robberies of two residences in a duplex, should be considered a single occurrence under the ACCA. *Id.* at 1208. The defendant and two accomplices entered the first apartment and robbed the occupant. While the defendant stayed in the first residence to prevent the victim from calling the police, his accomplices forced their way into the adjacent apartment and robbed the second victim. *Id.* The district court held that, because the two apartments were separate residences, the convictions were the result of criminal behavior on separate occasions and sentenced the defendant under the ACCA. *Id.* We

-10-

reversed, concluding that the robberies formed a single episode because the defendant "never left his original location, he never ceased his original conduct and he never successfully escaped the site of the first crime until the second was complete." *Id.* at 1210.

In *United States v. Thomas*, 211 F.3d 316 (6th Cir. 2000), the defendant argued that the district court erred in sentencing him as an armed career criminal under the ACCA after it had concluded that his two prior convictions for rape constituted separate predicate offenses. In the rape convictions at issue, the defendant and his accomplice took control of a vehicle driven by a woman, forced the vehicle to stop, and then took turns beating and raping the driver and her passenger. *Id.* at 318. We determined that the sexual assault began when the defendant and his accomplice entered the vehicle and did not end until both men exited the vehicle, each having assaulted and raped both women. *Id.* at 321. Because there was not a definable endpoint to the first crime before the second began, we concluded that the defendant's two convictions for rape were not the result of crimes committed on separate occasions for ACCA purposes. *Id.*

In *United States v. Carnes*, 309 F.3d 950, 956 (6th Cir. 2002), we held that two burglaries, perpetrated consecutively in nearby homes, were properly considered separate occasions under the ACCA. We identified the time at which the defendant left the first house to burglarize the second as the "obvious" endpoint between the two offenses. *Carnes*, 309 F.3d at 956. We further found it meaningful that the robberies occurred in separate, distinct locations. *Id.*

Finally, we addressed the issue most recently in *Hill*, where we concluded that two burglaries, occurring consecutively and across the street from one another, were committed on separate

occasions for purposes of the ACCA. *Hill*, 440 F.3d at 294, 298. We reviewed our prior decisions that had considered the ACCA's separate-occasions requirement and suggested that there are "at least three indicia that offenses are separate from each other." *Id.* at 297.

> First, two offenses are "committed on occasions different from one another" under the ACCA, if it is possible to discern the point at which the first offense is completed, and the subsequent point at which the second offense begins. . . . Second, two offenses are committed for ACCA purposes if it would have been possible for the offender to cease his criminal conduct after the first offense, and withdraw without committing the second offense. . . . Finally, separate offenses are committed if the offenses are committed in different residences or business locations.

*Id.* at 297-98.

Although the details of Player's January 6, 1997, robberies are largely unavailable, the circumstances surrounding these robberies indicate that the district court properly determined that these crimes were "committed on occasions different from one another." The facts here are analogous to *Brady*, *Wilson*, and *Hill*, as the robberies occurred at different locations and were perpetrated against different victims. On January 6, 1997, at 5:40 p.m., Player robbed victim number one near 749 Geneva in Dayton, Ohio. Player then traveled to 2017 Wesleyan in Dayton, where he robbed victim number two 28 minutes later at 6:08 p.m. Therefore, we can distinguish easily between the two robberies, because Player left the site of the first robbery in order to commit the second. After robbing Odessa Stephens at 5:40, Player had the opportunity to refrain from committing a second robbery, but chose instead to commit a second robbery against a second victim in a new location. This case therefore falls squarely in line with our previous decisions construing

No. 05-3566
USA v. Player

§ 924(e)(1), and the district court properly sentenced Player as an armed career criminal in accordance with the ACCA.

Affirmed.